# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **M.M., D.T., and W.T.**

**No. 21-0960** (Jackson County 19-JA-78, 19-JA-79, and 21-JA-31)

## MEMORANDUM DECISION

Petitioner Mother A.S., by counsel Ryanne A. Ball, appeals the Circuit Court of Jackson County's October 27, 2021, order terminating her parental rights to M.M., D.T., and W.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of remanding the matter for appropriate findings. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on the children's behalf in support of the circuit court's order. Intervenor Maternal Grandmother B.S., by counsel Tanya Hunt Handley, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights based on allegations upon which the court failed to adjudicate her as an abusing parent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the governing law, the briefs, and the record presented, the Court finds that the circuit court erred in proceeding to disposition in regard to W.T. without properly adjudicating petitioner of abusing and/or neglecting that child. The circuit court further erred in failing to set forth sufficient findings of fact and conclusions of law by written order or on the record to support termination of petitioner's parental rights to all of the children. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand the matter for further proceedings consistent with this decision.

In May of 2019, the DHHR filed a child abuse and neglect petition against the parents based upon allegations of medical neglect, physical abuse, drug use, and domestic violence. The circuit court held an adjudicatory hearing in September of 2019 during which petitioner stipulated to exposing the children to domestic violence, general neglect, and that then seven-month-old D.T.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

was malnourished at the time of removal. The court accepted the stipulation, adjudicated petitioner as an abusing parent, and granted her a post-adjudicatory improvement period.

After several failed placements, the DHHR returned the children to petitioner's home in December of 2019. Shortly after the children were returned to the home, petitioner took then three-year-old M.M. to a local hospital for a physical evaluation after she exhibited concerning sexual behaviors. The physical exam of the child was normal, and her behaviors were normal for a child of her age, per a report in the record. Despite this, petitioner proceeded to set up play therapy for M.M. to further address the child's behaviors. In May of 2020, the court extended petitioner's improvement period for an additional ninety days and noted her compliance.

However, later that month, the DHHR filed an amended petition alleging that the father of D.T. failed a drug screen. The DHHR removed the children from the parents' home and placed the children in the intervenor's home. The next month, the court held a preliminary hearing on the amended petition, which both parents waived. At that time, the case was not set for an adjudicatory hearing on the new allegations, and no adjudicatory hearing was ever held on the allegations in the amended petition.

In August of 2020, petitioner filed a motion for a post-dispositional improvement period, citing a need for continued services. The court held a hearing on petitioner's motion in November of 2020 and granted petitioner's motion. In January of 2021, the guardian filed a motion to suspend visitation between the parents and the children after M.M. allegedly disclosed to the intervenor grandmother that the father of D.T., her stepfather, tickled her genitalia. The court granted the guardian's motion and held a hearing in February of 2021. At the hearing, the parties raised the issue of sexual abuse allegations but did not further amend the abuse and neglect petition. The court made a finding at the hearing that petitioner was substantially complying with the terms of her improvement period.

In March of 2021, petitioner gave birth to W.T., who spent several weeks at a local hospital due to complications with his lungs at birth. During this time, petitioner had unsupervised and unlimited contact with W.T., and he remained in her physical and legal custody. Later that month, the court held a hearing on the matter of the parents' visitation with the children. At the hearing, petitioner objected to testimony regarding sexual abuse allegations as they were not alleged in any of the pending petitions and petitioner had not been adjudicated on such allegations. The court continued the matter and set it for hearing in April of 2021. After the hearing, the court entered a sua sponte order with the presiding judge recusing herself from the matter "for reason known to the court," and the case was reassigned to another judge.

After a new judge had been appointed, the DHHR filed a second amended petition in March of 2021, adding W.T. to the case, requesting his placement in DHHR custody, and alleging that M.M. had been sexually abused by her stepfather, the father of D.T. and W.T. The court set the matter for a preliminary hearing in April of 2021. Prior to the preliminary hearing on the second amended petition, the DHHR filed a third amended petition adding further detail to the previously alleged sexual abuse allegations. The parents waived their rights to a preliminary hearing on the second and third amended petitions.

In April of 2021, the court held an adjudicatory hearing during which petitioner objected to a Child Advocacy Center ("CAC") witness, citing the lack of an expert witness disclosure. Petitioner also argued that reports relative to the proceedings had not been disclosed by the DHHR. The court set the matter for hearing in May of 2021 and ordered the DHHR to provide all outstanding discovery by the end of April of 2021.

The court held an adjudicatory hearing on the third amended petition in May of 2021 during which it heard testimony from several witnesses. After the DHHR did not present her as a witness, petitioner called the DHHR worker assigned to the case to testify. The DHHR worker testified that she did not participate in drafting the third amended petition, that the DHHR had not substantiated the allegations contained within said petition, and that she was unaware of the allegations contained in the petition until after it was filed. After further discussion about the petition, the court granted a motion from the DHHR to strike language from the third amended petition and granted the guardian leave to file a fourth amended petition.

Later in May of 2021, the guardian filed a fourth amended petition, which petitioner filed a written objection to days later. The next month, the court held a hearing regarding petitioner's objections to the fourth amended petition and ultimately overruled her objections and accepted the fourth amended petition as filed. The court further ordered that testimony taken at hearings earlier that month concerning the third amended petition would be admissible as evidence of the allegations contained in the fourth amended petition.

The court entered an order in July of 2021, finding that although M.M. had been exhibiting "concerning behaviors that appear to indicate she has been the victim of sexual abuse," the guardian had not shown by clear and convincing evidence that the father of D.T. and W.T. was the perpetrator of that abuse. As a result, the court did not adjudicate petitioner on any additional allegations of abuse and neglect contained in the third amended or fourth amended petitions.

In September of 2021, the court held a final dispositional hearing and heard additional evidence regarding petitioner's participation in her post-adjudicatory and post-dispositional improvement periods and on a pending motion to terminate her parental rights. The court also considered petitioner's stipulation to abuse and neglect of M.M. and D.T. to the initial petition in September of 2019 as evidence of her adjudication as to those children. Further, the court found that W.T. was "an abused and neglected child," despite the lack of a prior adjudication order as to the child. Although it considered evidence relative to petitioner's improvement period, the court further found that it "need not address whether [petitioner and the father of D.T. and W.T.] successfully completed their respective periods of improvement" because the pivotal question at disposition was the best interests of the children. As such, the court did not make findings as to whether petitioner successfully completed her improvement period.

Ultimately, the court entered a dispositional order that terminated petitioner's parental rights to all three children on October 27, 2021. However, this order did not include specific language from the disposition statute setting forth the findings required for termination of parental rights. Specifically, the order failed to state that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination is "necessary for the welfare of the child." Later, petitioner filed a motion for post-termination

visitation, which the court denied at a hearing in December of 2021. It is from the October 27, 2021, dispositional order that petitioner appeals.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Additionally, we have explained that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009).

On appeal, petitioner argues that the circuit court erred in failing to adjudicate as to W.T., who was born during the proceedings below. Petitioner acknowledges that she stipulated to abusing and neglecting M.M. and D.T. on allegations in the initial petition, and the court adjudicated her as an abusing parent in September of 2019. However, W.T. was never adjudicated as an abused child during the proceedings. The DHHR filed a second amended petition in March of 2021, adding W.T. to the case after his birth. The court also set the matter for a preliminary hearing in April of 2021. Prior to the preliminary hearing on the second amended petition, the DHHR filed a third amended petition adding further detail to the previously alleged sexual abuse allegations involving M.M. The DHHR failed to substantiate the allegations in the third amended petition and the final, fourth amended petition. As such, the record shows that petitioner only stipulated to abusing M.M. and D.T. in September of 2019, prior to W.T.'s birth, and she was never adjudicated in regard to W.T. While the court made a finding in its dispositional order that

---

[2]M.M.'s father's parental rights were terminated below. D.T. and W.T.'s father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption by their maternal grandmother.

4

W.T. was an abused and neglected child, there was never a proper adjudicatory hearing where the DHHR was required to prove, by clear and convincing evidence, that petitioner abused and/or neglected W.T. *See* W. Va. Code § 49-4-601(i) (requiring the circuit court to determine "whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent," and that "[t]he findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence"). Accordingly, although the court ultimately found that petitioner abused and neglected all three children, this finding is erroneous in regard to W.T. because of the failure to hold the DHHR to the applicable burden of proof.

> This Court has repeatedly stressed that
>
> "before a court can begin to make any of the dispositional alternatives under W.Va.Code, [49-4-604], it must hold a hearing under W.Va.Code, [49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syllabus Point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

Syl. Pt. 3, in part, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019). Here, the DHHR concedes that "an order adjudicating [p]etitioner . . . of abuse and/or neglect of the infant W.T., who was born after the initial petition was filed, was not entered prior to the dispositional hearing." The DHHR argues this was likely "an inadvertent omission, given the parent's preexisting stipulations to abusing and neglecting W.T.'s two older siblings." However, "[o]ur insistence on procedural integrity in abuse and neglect cases is not hollow formality. Our statutes, cases, and rules mandate a two-phase approach in abuse and neglect proceedings to 'support[] the constitutional protections afforded to parents in permanent child removal cases.'" *Id*. at 695, 827 S.E.2d at 837 (citation omitted). Accordingly, we must vacate, in part, the portion of the circuit court's October 27, 2021, order insomuch as it terminates petitioner's parental rights to W.T.

Next, as petitioner has correctly asserted on appeal, the circuit court further failed to make adequate findings of fact and conclusions of law in writing or on the record to support its decision to terminate petitioner's parental rights to all of the children. Rule 36(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provisions of W. Va. Code § 49-4-604. The court shall enter a disposition order, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing.

West Virginia Code § 49-4-604(c) sets forth the various dispositions to be imposed at the conclusion of abuse and neglect proceedings. Relevant to petitioner's disposition, the circuit court must find that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. W. Va. Code § 49-4-604(c)(6). West Virginia Code § 49-4-604 includes other factors that the court must consider prior to the termination of a parent's parental rights. *Id.*

Here, the required findings are absent from the circuit court's written order and the record. This Court has held that

> [w]here a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § [49-4-604] on the record or in the order, the order is inadequate.

Syl. Pt. 4, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). In *Edward B.*, we explained that "[c]lear and complete findings by the trial judge are essential to enable [the appellate court] properly to exercise and not exceed our powers of review." 210 W. Va. at 632, 558 S.E.2d at 631 (citation omitted).

On appeal, the DHHR notes that "[r]estrictions due to COVID-19, recusal of the initial circuit judge for reasons not apparent in the record, and an unexplained issue regarding verification of the third amended petition added confusion and delay to this case." Despite the length and complexity of this case, the court failed to make a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. Additionally, the court failed to make other findings required by statute to be made prior to the termination of a parent's parental rights, such as, but not limited to, petitioner's progress, or lack thereof, during her improvement period.

This Court has previously held that,

> [a]t the conclusion of the improvement period, the court *shall* review the performance of the parents in attempting to attain the goals of the improvement period and *shall*, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) (Emphasis added). Further, West Virginia Code § 49-4-604(e) provides

> [t]he court may, as an alternative disposition, allow the parents or custodians an improvement period not to exceed six months. During this period the court shall require the parent to rectify the conditions upon which the determination was based. The court may order the child to be placed with the parents, or any person found to be a fit and proper person, for the temporary care of the child during the period. At the end of the period, the court *shall hold a hearing to determine whether the conditions have been adequately improved and at the conclusion of the hearing shall make a further dispositional order in accordance with this section.*

6

(Emphasis Added). The DHHR concedes that "[d]ue to procedural errors and omission of requisite dispositional findings, this case should be remanded to correct those errors." We agree. Due to the lack of proper factual findings, we find it necessary to vacate and remand the circuit court's final dispositional order for the entry of an order that contains sufficient findings of fact and conclusions of law for appellate review.

For the foregoing reasons, the circuit court's October 27, 2021, order, is hereby vacated and remanded for additional proceedings concerning W.T., beginning with a properly noticed adjudicatory hearing as to that child and the entry of a new dispositional order consistent with this decision as to all of the children, consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, and Chapter 49 of the West Virginia Code.[3] The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and Remanded.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

[3]This Court vacates the circuit court's dispositional order only as it relates to petitioner's parental rights and does not affect the termination of the fathers' parental rights.